IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREEM MYERS,
    Petitioner,

v.

UNITED STATES OF AMERICA.

CIVIL NO. 08-4309
CRIMINAL NO. 05-619-6

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                                                             **June 10, 2010**

Petitioner Kareem Myers seeks to vacate, set aside, or correct the sentence imposed on him by this Court on March 16, 2007. Petitioner alleges that trial counsel was ineffective for failing to request an independent chemical analysis of the substances that he sold to a government cooperator, to determine whether those substances contained a detectable amount of cocaine base and to determine the correct weight of the substances. He also asserts that trial counsel failed to adequately explain the implications of his career offender status. Now before the Court is Petitioner's Amended Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255[1]. This matter has been fully briefed, an evidentiary hearing has been conducted thereon, and it is ripe for disposition.

### I. PROCEDURAL BACKGROUND

Petitioner entered a counseled guilty plea on February 2, 2006 to two counts of distribution of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[2]

---

[1] Doc. No. 527. The document numbers referenced herein correspond with criminal docket number 05-619-6.

[2] Doc. No. 183.

Petitioner entered into a Guilty Plea Agreement ("Agreement"),[3] in which he agreed to provide truthful testimony and full cooperation to the Government in return for a motion for downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines ("Guidelines"). The Agreement stipulated that Petitioner was classified as a career offender under Guidelines § 4B1.1, and that the Government would not move for a sentence below the mandatory minimum of ten years imprisonment.[4] The Agreement also stipulated that the amount of crack cocaine distributed by Petitioner weighed approximately 54 ounces.[5] Petitioner discussed the Agreement with his counsel, Salvatore Adamo, Esquire,[6] signed the Agreement, and acknowledged at the plea hearing that he understood the contents of the Agreement.[7]

After his guilty plea and before sentencing, Petitioner informed the Government that he was withdrawing his cooperation.[8] On March 16, 2007, the Court sentenced Petitioner to 262 months on each count to be served concurrently, eight years of supervised release, and a special assessment of $200.[9] At sentencing, Petitioner did not object to the Presentence Report or to his classification as a career offender, nor did he challenge the substances as crack cocaine. Petitioner timely appealed his conviction to the Third Circuit; however, his appeal was soonafter dismissed when that Court granted the Government's Motion to Enforce the appellate waiver provisions of

---

[3]Doc. No. 204 (Guilty Plea Agreement ("Agreement")).

[4]Agreement ¶¶ 5, 7(c).

[5]Id. ¶ 7(b).

[6]Doc. No. 554 (Transcript of habeas hearing held on March 31, 2010 ("Habeas Tr.")) 13:21 - 19:25.

[7]Doc. No. 183. (Transcript of plea hearing held on February 2, 2006 ("Plea Tr.")) 11:19-21.

[8]Habeas Tr. 24:4-8.

[9]Doc. No. 360.

Petitioner's Agreement.[10] On August 6, 2007, Petitioner challenged the appellate waiver in his petition for certiorari to the United States Supreme Court, which was denied. Petitioner also filed a Motion for Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2)(2) with this Court, which was denied as well.[11]

Petitioner then filed a timely *pro se* habeas corpus motion pursuant to 28 U.S.C. § 2255.[12] The Court appointed Criminal Justice Act counsel John J. Fioravanti, Jr., Esquire to represent Petitioner and permitted counsel to submit an amended motion and supporting memorandum of law,[13] to which the Government responded.[14] Petitioner makes several arguments in his *pro se* motion and his amended motion, all under the umbrella of his sixth amendment right to receive effective assistance of counsel. Petitioner admits that he knowingly and voluntarily entered into an appellate waiver, but asserts that the waiver does not bar appeals in which a defendant alleges that he entered into a guilty plea based on ineffective assistance of counsel.[15] In such cases, he argues, the waiver is invalid as it is the result of a miscarriage of justice.[16]

Petitioner argues that trial counsel was ineffective for several reasons: first, counsel failed to request an independent chemical analysis of the substances that Petitioner sold to a government cooperator to determine whether those substances contained a detectable amount of

---

[10]Doc. Nos. 363, 420.

[11]Doc. No. 514.

[12]Doc. No. 494.

[13]Doc. Nos. 517, 527, 528.

[14]Doc. No. 535.

[15]Pet'r's Br. in Supp. of Mot. for Hr'g and Grant of Relief Pursuant to 28 U.S.C. § 2855 at 2.

[16]Id.

cocaine base and to determine the correct weight of the substances. Second, Petitioner asserts that his plea counsel encouraged him to enter a guilty plea without explaining that he would be sentenced as a career offender, and that any imposed sentence would be enhanced due to his prior convictions, in effect alleging that his guilty plea was not knowing or voluntary. Third, Petitioner claims that he did not have two qualifying prior convictions pursuant to U.S.S.G. § 4B1.1, and that his attorney failed to object to his treatment as a career offender. Petitioner states that he expected to receive a sentence of imprisonment between 87 to 108 months; instead he received 262 months. The Court granted an evidentiary hearing on Petitioner's Amended Motion, but limited the inquiry to Petitioner's sixth amendment right to assistance of counsel claim.

At the evidentiary hearing, held on March 31, 2010, the Government presented the testimony of Salvatore Adamo, Esquire, Petitioner's attorney from the date of his arrest through his sentencing.[17] Mr. Adamo summarized his interactions with Petitioner, explaining conversations the two had regarding his culpability, his career offender status, and the guideline sentence.[18] Mr. Adamo's testimony reflected that they had these conversations both before Petitioner's guilty plea and between the guilty plea and sentencing; Petitioner did not contend that he was innocent, he did not assert that the drugs were not properly identified in the indictment or the Agreement, nor did he insist that he was not a career offender.[19] Petitioner, however, testified that, after his guilty plea, he had asked Mr. Adamo to "check to see if [the substance sold to the government cooperator] was []

---

[17] Mr. Adamo was appointed as counsel for Petitioner pursuant to the Criminal Justice Act. See Habeas Tr. 37:3-7.

[18] Id. 6:3 - 19:8.

[19] Id. 8:20-22, 12:24-13:14, 15:10-17, 16:21-19:8.

cocaine and the amount of it," and that Mr. Adamo promised to check into it and never did.[20] With respect to his career offender status, Petitioner asserted that he never understood what it meant and Mr. Adamo did not respond to his requests to explain it; Petitioner did admit, however, that he knew he was facing a ten-year mandatory minimum sentence.[21]

## II. DISCUSSION

Habeas corpus relief protects only "against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[22] Section 2255 allows a prisoner in federal custody to move for habeas corpus relief "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."[23] Such a motion "is addressed to the sound discretion of the district court."[24] If the sentencing court finds "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," it may grant habeas corpus relief by discharging or re-sentencing a federal prisoner.[25] Pursuant to § 2255, habeas corpus relief may be granted for claims of constitutional error.[26] Yet, a prisoner must first establish that such an error

---

[20]Id. 37:8-25.

[21]Id. 39:19-40:18.

[22]United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

[23]28 U.S.C.A. § 2255(a) (2008).

[24]United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).

[25]28 U.S.C.A. § 2255(b).

[26]United States v. Addonizio, 442 U.S. 178, 185 (1979).

occurred to be successful on his claim.[27]

If a prisoner fails "to raise his claim on direct review, the writ of [habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"[28] A petitioner must demonstrate cause by showing that "'some external impediment' prevented him from raising the claim," such as ineffective counsel.[29] Prejudice will be found when "'errors at trial . . . worked to [the petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[30] "A further exception exists where 'a fundamental miscarriage of justice would result from a failure to entertain the claim.'"[31]

The Sixth Amendment right to assistance of counsel is actually "the right to effective counsel."[32] To establish a claim for ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that Petitioner was prejudiced by it.[33] To succeed on the first prong, Petitioner must show that his counsel's representation "fell below an objective standard of reasonableness."[34] Petitioner "must identify the acts or omissions of counsel that are

---

[27]See DeLuca, 889 F.2d at 506.

[28]Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

[29]Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992) (quoting McClesky v. Zant, 499 U.S. 467, 494, 497 (1991)).

[30]Wise, 958 F.2d at 34 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original)).

[31]Id. (quoting McClesky, 499 U.S. at 494-95).

[32]Strickland v. Washington, 466 U.S. 668, 686 (1984).

[33]United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (citing Strickland, 466 U.S. at 687).

[34]Strickland, 466 U.S. at 688.

alleged not to have been the result of reasonable professional judgment."[35] The Court will determine "whether counsel's assistance was reasonable considering all the circumstances," including prevailing professional norms of practice.[36] A fair assessment of attorney performance makes "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[37] The Court's scrutiny of counsel's performance will be "highly deferential," "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of professional assistance."[38]

In order to demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[39] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[40] The Court may determine if there is sufficient prejudice to maintain an ineffectiveness claim before evaluating the reasonableness of counsel's performance

Petitioner in the instant matter has not provided any credible evidence that Mr. Adamo committed any errors in representing him, nor did he convincingly assert that he was prejudiced by the representation. His responses at the plea hearing, in fact, reflect the opposite:

THE COURT: Mr. Adamo, has been representing you?

[PETITIONER]: Yes.

---

[35] Id. at 690.

[36] Id. at 688.

[37] Id. at 689.

[38] Id.

[39] Id. at 694.

[40] Id.

> THE COURT: And have you had an adequate opportunity to discuss your case with him?
>
> [PETITIONER]: Yes.
>
> THE COURT: Are you satisfied with the representation?
>
> [PETITIONER]: Yes.[41]

Petitioner's contention that he asked Mr. Adamo to conduct an independent analysis of the substance that he sold to a government cooperator is flatly contradicted by Mr. Adamo's credible and thorough testimony, and it is inconsistent with Petitioner's statements to the Court during his guilty plea colloquy and the sentencing hearing. The Government and the Court clearly identified that the charged substance was cocaine base, or crack, several times during the plea hearing:

> THE COURT: Essentially, you are charged in Courts 9 and 10 of this indictment with knowingly and intentionally distributing more than five grams of cocaine base, that is crack.[42]
>
> . . . .
>
> [PROSECUTOR]: . . . . The plea agreement provides that [Petitioner] agrees to plead guilty to Counts 9 and 10 of the superceding indictment.[43]
>
> . . . .
>
> [PROSECUTOR]: . . . . The elements are first, that [Petitioner] distributed here more than five grams of cocaine base or crack and that [Petitioner] did so knowingly and intentionally.
>
> THE COURT: And do you understand the definitions of the crimes to which you are pleading guilty?
>
> [PETITIONER]: Yes.[44]

---

[41] Plea Tr. 8:1-9.

[42] Id. 9:8-11.

[43] Id. 9:20-23.

[44] Id. 21:23-25 - 22:1-8.

-8-

The Court also made it clear to Petitioner the possible penalties he could receive in pleading guilty:

> THE COURT: And did you understand that on each count, Count 9 and Count 10, which are essentially the same crime but different instances, different occurrences, understand?
>
> [PETITIONER]: Yes.
>
> THE COURT: You could receive ten year mandatory minimum terms on each of those counts, not necessarily running together. Do you understand that?
> I have to give you the worst possible scenario so that you understand exactly what you are walking into, not that that will happen, anymore than you could get a sentence up to a lifetime in prison, which you could. Do you understand that is the maximum you can get?
>
> [PETITIONER]: Yes.
>
> THE COURT: Do you understand the mandatory minimums plus the maximum?
>
> [PETITIONER]: Yes.[45]

The Court inquired of Petitioner repeatedly whether he understood the charged offenses and the terms of the Agreement, for example:

> [PROSECUTOR]: As part of the [Guilty Plea] agreement, [Petitioner] and the Government have also entered into [sic] certain stipulation, essentially that the cocaine base in this case is crack.
> That he distributed a total of approximately 54.3 grams of crack, and that his guideline range should be calculated on that basis. That he is a career offender as defined in the guidelines.[46]
>
> . . . .
>
> THE COURT: Mr. Myers, do you understand that these are the terms of your plea agreement?

---

[45]Id. 25:15-25 - 26:1-7.

[46]Id. 10:15-22.

[PETITIONER]: Yes.[47]

After the Government recited the facts upon which the plea was based, Petitioner again confirmed his admission of guilt to the charges in the indictment:

> [PROSECUTOR]: Your Honor, the Government's evidence would show that in about September of 2004 the DEA Task Force in Philadelphia and the Philadelphia Police began an investigation of the drug activities of Robert Wright and Edward Basley.
> In the course of that investigation they obtained authorization to tap Mr. Wright's cell phone or one of his phones, and also in the course of that investigation they identified this defendant, Kareem Myers, as an associate of Mr. Wright.
> On April 26th, 2005 a confidential source asked Mr. Myers at the direction of the DEA task force to sell the [confidential source] an ounce of crack. Later that day the [confidential source] called Myers and they arranged to meet at the Old Navy store in the 4800 block of Roosevelt Boulevard in Philadelphia.
> The [confidential source] went to that location with DEA surveilling the meeting. He wore a wire. He met with Mr. Myers in [his] vehicle where Mr. Myers sold [him] approximately one ounce of crack.
> The [confidential source] then turned that substance over to the DEA agents who submitted it to the lab and the lab determined that it was exactly twenty-seven grams net weight of cocaine basis
> In the same way on May 10th the [confidential source] called Mr. Myers and they agreed to meet at the Old Navy store again so that Myers could again sell the [confidential source] an ounce of crack.
> Once again they went - DEA surveilled the location, the [confidential source] met with Myers there. Myers got into the [confidential source]'s vehicle and he sold him approximately an ounce of crack again for eight hundred dollars.
> Again, the meeting was recorded, monitored and surveilled. The [confidential source] turned that substance over to the DEA task force, which submitted it to the lab and it was determined to be 27.3- grams net weight of crack cocaine.
>
> . . . .
>
> THE COURT: Mr. Myers, do you think that [the Prosecutor] accurately summarized

---

[47]Id. 11:9-11.

>>>>the facts of this case for me?

[PETITIONER]: No.

THE COURT: What's different?

[PETITIONER]: I'm sorry. That was right.

THE COURT: That was right?

[PETITIONER]: Yes.

THE COURT: Did she tell me the facts that you agree occurred?

[PETITIONER]: Yes.

THE COURT: Then do you agree and admit that you are guilty of these offenses?

[PETITIONER]: Yes.[48]

At the hearing on his instant Motion, Petitioner could not explain to the Court why he pled guilty and accepted responsibility for the charged offenses if he believed that the substance that he sold was not cocaine. Similarly, he could not explain why he never raised the issue that his previous criminal history was somehow miscalculated or misstated. Furthermore, Petitioner's frequent memory lapses and contradictory statements concerning the time period at issue significantly diminish the weight of his argument. For example, he states in his instant Motion that prior to sentencing he believed he would receive a sentence of 87 to 108 months; at the evidentiary hearing, however, he admitted that he knew he was facing a ten-year mandatory minimum sentence.

Petitioner was also unable to demonstrate prejudice; he did not show how Mr. Adamo's actions changed the outcome of the proceedings. Although Petitioner insists he asked for the substance to be tested, he does not assert that he believed the substance was something other than

---

[48]Id. 26:11 - 28:16.

-11-

crack cocaine. Also, he does not explain how the outcome of the proceedings would have differed if he had been given a better explanation by Mr. Adamo regarding the implications of his career offender status.

Mr. Adamo, an experienced defense attorney,[49] provided testimony in this matter that was credible and supported by the record. He testified that at no point during his representation did Petitioner assert his innocence or cast doubt upon the nature or amount of drugs included in the charged offenses. If Petitioner had asked for an independent analysis, Mr. Adamo claimed that he certainly would have acquired one. Also, Mr. Adamo listed the various times that he reviewed plea and sentencing documents with Petitioner, stating that he urged him to cooperate with authorities for a possible downward departure given the potential for a lengthy sentence of imprisonment. We find no reason to believe that he did not exercise his reasonable professional judgment at all times during the representation of Petitioner, and we find Petitioner's allegations wholly insufficient. As the Court stated in the evidentiary hearing,

> "[I]f we are going to entertain memory lapses that are convenient[ly] placed in order to support a premise and a position in hindsight that said I didn't know what could have happened to me, and those are not supported by the record, then it would turn the criminal justice in any court on its ear. . . ."[50]

The Court finds that Petitioner's ineffective assistance of counsel claim has no merit. As we do not find any evidence that Petitioner's constitutional right to effective counsel was violated, we find no miscarriage of justice sufficient to invalidate the appellate waiver. Thus, the

---

[49] Mr. Adamo has handled in excess of 1,000 criminal defense cases, and has focused primarily on criminal defense in his law practice since 1983. See Habeas Tr. 5:3-24.

[50] Id. 67:7-12.

Court will enforce the appellate waiver and deny Petitioner's motion on this ground as well.[51]

## III. CONCLUSION

Petitioner has additionally filed an Application for Certificate of Appealability,[52] to which the Government has responded.[53] For the reasons outlined above, Petitioner has not made a substantial showing of the denial of a constitutional right;[54] his ineffective assistance claim lacks credibility and is unsubstantiated by the record. Thus, the Court will deny his request.

An appropriate Order follows.

---

[51] See United States v. Khattak, 273 F.3d 557 (3d Cir. 2001).

[52] Doc. No. 551.

[53] Doc. No. 553.

[54] See 28 U.S.C. § 2253(c)(2); Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).